**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SARAH SLAUGHTER, | : |
| | : Case No. 2:20-cv-01888 |
| Plaintiff, | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Chelsea M. Vascura |
| REGIONAL ACCEPTANCE CORP. | : |
| | : |
| | : |
| Defendant. | : |

**OPINION & ORDER**

**I.     INTRODUCTION**

This matter is before the Court on Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to Fed. R. Civ. Pro. 12(b)(1). (ECF No. 12). For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion. The Court **DISMISSES WITHOUT PREJUDICE** Defendant Regional Acceptance Corporation's counterclaim for breach of contract. (ECF No. 5).

**II.     BACKGROUND**

This case concerns alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). Specifically, Plaintiff Sarah Slaughter ("Ms. Slaughter") alleges that Defendant Regional Acceptance Corporation ("Regional") initiated calls to her cell phone using an automated telephone dialing system, or an artificial or prerecorded voice, for non-emergency purposes and without her prior express consent in violation of 47 U.S.C. § 227(b)(1)(A)(iii). (ECF No. 1 at 3-4). Regional counterclaimed for breach of contract, (ECF No. 5), and Ms. Slaughter filed a motion to dismiss the counterclaim for lack of subject matter

jurisdiction. (ECF No. 12). The parties' dispute centers on whether this Court has supplemental jurisdiction over Regional's breach of contract claim.

Ms. Slaughter filed a one-count complaint on April 14, 2020, alleging that Regional violated the TCPA. (ECF No. 1). The complaint makes, *inter alia*, the following allegations. Ms. Slaughter is a resident of Ohio, while Defendant is a business entity with an address in North Carolina. (*Id.* at 2). Regional repeatedly called Ms. Slaughter's cell phone "using an automated telephone dialing system and/or pre-recorded voice." (*Id.*). Ms. Slaughter knew the calls were automated because no caller was on the line until, after a delay, she was connected to Regional's live representatives or the call was terminated. (*Id.* at 3). Shortly after the calls began, she told Regional to stop calling her, and Regional acknowledged her instruction but continued the calls. (*Id.*). Regional knew or should have known it did not have Ms. Slaughter's express consent and that any consent it thought it had was revoked. (*Id.* at 4). The calls were not made for emergency purposes. (ECF No. 1 at 4). Based on such allegations, Ms. Slaughter seeks actual, statutory, and treble damages, as well as injunctive and other relief. (*Id.* at 4-5).

On June 22, Regional filed an answer and counterclaim. (ECF No. 5). Regional's counterclaim against Ms. Slaughter is for breach of contract. (*Id.* at 7-8). Regional alleges that Ms. Slaughter purchased a car in 2013 and financed part of the purchase price through the dealership, which subsequently assigned its interest in the financing contract to Regional (the "Contract"). (*Id.* at 7). Regional further alleges Ms. Slaughter materially breached the Contract by failing to make payments when due. (*Id.*). Regional claims damages, "as [Ms.] Slaughter currently owes $9,762.17 under the Contract." (*Id.* at 8).

Ms. Slaughter filed a motion to dismiss Regional's counterclaim for lack of subject matter jurisdiction on July 6, 2020, along with a memorandum in support of her motion. (ECF Nos. 12;

12-1). First, she argues that Regional's counterclaim is permissive rather than compulsory, because it does not arise out of the same transaction or occurrence as her TCPA claim. (ECF No. 12-1 at 4-7). Second, she argues that the Court lacks supplemental jurisdiction over Regional's breach of contract claim because it and Ms. Slaughter's TCPA claim do not derive from a common nucleus of operative fact. (*Id.* at 7-11). On that front, she: (1) analogizes this case to several under the Fair Debt Collection Protection Act; and (2) argues that the parties must prove different sets of facts to establish the elements of their respective claims. (*Id.* at 8-10). Finally, Ms. Slaughter argues that the Court lacks original jurisdiction over Regional's breach of contract claim, because it does not arise under federal law and the amount in controversy is not in excess of $75,000. (*Id.* at 10-11).

Regional filed a response in opposition to Ms. Slaughter's motion to dismiss on July 27, 2020, contending that the Court has supplemental jurisdiction over its breach of contract claim. (ECF No. 15). It gives essentially four reasons in support of the conclusion that its breach of contract claim and Ms. Slaughter's TCPA claim derive from a common nucleus of operative fact. First, Regional asserts that the claims derive "from a single, unified transaction: Regional['s] breach of contract claim alleges Plaintiff entered into a Retail Installment Contract so she could finance the purchase of a new vehicle." (ECF No. 15 at 4). The alleged TCPA violations involved "an attempt to collect a debt on the very same contract." (ECF No. 15 at 5). Second, Regional argues that the issues in this case are "interrelated" and the parties will "likely both rely on substantially the same evidence to support their claims . . . ." (ECF No. 15 at 5). Third, it argues that although "the claims will ultimately require some different evidence or proof," they may still derive from a common nucleus of operative fact. (ECF No. 15 at 5). Finally, Regional argues that it has "already put this evidence at issue" because it set forth an affirmative defense of recoupment in its answer. (ECF No. 15 at 5). Thus, according to Regional, the claims are "so intertwined" that

they share a common nucleus of operative fact. (ECF No. 15 at 5). Additionally, Regional argues that Ms. Slaughter's attempt to characterize its counterclaim as permissive rather than compulsory is irrelevant to the question of supplemental jurisdiction. (ECF No. 15 at 6-8).

Ms. Slaughter never filed a reply. Her motion to dismiss is now ripe for review.

### III.     STANDARD OF REVIEW

A party may assert defenses to a claim for relief in any pleading by responsive pleading or by motion. FED. R. CIV. P. 12(b). A federal district court's basis for subject matter jurisdiction over a dispute may be challenged by filing a motion under Federal Rule of Civil Procedure 12(b)(1). *See Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). Subject matter jurisdiction may be challenged at any time by any party, and the court may raise the issue *sua sponte*. *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2000). The party invoking federal subject matter jurisdiction bears the burden of proving jurisdiction to survive the motion. *Rogers*, 798 F.2d at 917. Normally, dismissals under Rule 12(b)(1) are not on the merits. *Id.*

In general, Rule 12(b)(1) motions "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted). A facial attack questions the sufficiency of the pleading, and the court takes as true the allegations in the complaint. *Id.* Jurisdiction exists if the allegations in the complaint establish federal claims. *Id.* A factual attack raises a factual controversy, and no presumptive truthfulness applies to the allegations in the complaint. *Id.* The court must weigh conflicting evidence "and arrive at the factual predicate that subject-matter does or does not exist." *Id.*

### IV.     ANALYSIS

The question presented is whether the Court has supplemental jurisdiction of Regional Acceptance's counterclaim for breach of contract. Because Ms. Slaughter's motion makes a facial

attack, the Court accepts as true the allegations in Regional's counterclaim. (ECF No. 12-1 at 2-3).

It is well settled that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). The two primary bases of original jurisdiction are federal question and diversity of citizenship jurisdiction. *See* 28 U.S.C. §§ 1331, 1332(a). Under the federal question jurisdiction statute, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the diversity of citizenship jurisdiction statute, district courts generally have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). Complete diversity is required, which exists only where each plaintiff is diverse from each defendant. *See, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Here, the Court has original jurisdiction of Ms. Slaughter's TCPA claim, which arises under federal law. *See Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 465 (6th Cir. 2010); 28 U.S.C. § 1331. The parties do not dispute such jurisdiction. Regional's counterclaim, however, is for breach of contract under state law, and according to Regional, the amount in controversy is $9,762.17. (ECF No. 5 at 8). Thus, neither of the primary bases of subject matter jurisdiction is presented here. Indeed, Regional does not argue that the Court has original jurisdiction of its breach of contract claim. Rather, it argues that supplemental jurisdiction exists.

### A.     Supplemental Jurisdiction under 28 U.S.C. § 1367(a)

In general, where a federal court has original jurisdiction in a civil action, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). When claims derive from a common nucleus of operative fact, they form part of the same case or controversy. *Blakely v. U.S.*, 276 F.3d 853, 861 (6th Cir., 2002) (citation omitted); *see also Michigan v. Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 355 (6th Cir. 2003) ("A related claim is one arising from a common nucleus of facts. . . The claims must also be such that a plaintiff would be expected to try them in one judicial proceeding.") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

At first blush, this case appears to be analogous to others with similar facts and procedural histories finding that the parties' claims did not derive from a common nucleus of operative fact. As discussed below, however, the instant matter is distinguishable.

One example of a case that may seem analogous is *Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993 (E.D. Mich. 1996). There, the court concluded that it lacked supplemental jurisdiction under § 1367(a) of the plaintiff's state law claims even though it had original jurisdiction of the plaintiff's Fair Credit Reporting Act claim under § 1331. *See id.* at 1000. The court reasoned that although the plaintiff's federal and state law claims were related in a "broad or causal sense[,]" the claims did not share any of the same operative facts. *Id.* at 998-99. The broad sense in which they were related was that "the entire relationship between the parties" consisted of the defendant's efforts to collect a debt allegedly incurred by the plaintiff and the plaintiff's subsequent attempts to force the defendant to comply with a settlement agreement between the parties. *Id.* at 998. The causal sense was that "but for the alleged breach of a settlement agreement that forms the basis of [the plaintiff's] state law claims, the alleged federal violation would not have occurred." *Id.* at 999. Nonetheless, "two distinct sets of 'operative facts' surround[ed]" the state and federal claims. *Id.*

The facts relevant to the resolution of the federal claim were "completely separate and distinct from the facts" relevant to resolution of the state claims. *Salei*, 913 F. Supp. at 999. Similarly, the state claims could "be resolved without any consideration whatsoever of a possible" violation of the Fair Credit Reporting Act. *Id.* Under such circumstances, the court found the plaintiff would not ordinarily be expected to bring both the state and federal claims in a single proceeding. *Id.* The court concluded that the exercise of jurisdiction over the state claims "would require inquiry into a distinct and independent set of events[,]" and the "fact that such a separate inquiry would be necessary" showed the federal and state claims did not derive from a common nucleus of operative fact. *Id.* at 1000.

Another example is *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818 (M.D. Tenn. 2018). There, the court concluded that two distinct sets of operative facts surrounded the plaintiff's TCPA claim and the defendant's counterclaim for fraudulent inducement[1] under state law. *Id.* at 823. It too held that there was no supplemental jurisdiction over the counterclaim, using much the same reasoning as was found in *Salei*:

> In short, both parties would be required to allege facts and produce evidence that is chronologically separate and unique to each cause of action. [The] TCPA Claim and [the] Counterclaim can succeed and do not share a common nucleus of operative fact dependent on the other. [The] Counterclaim on the car loan has a truly tangential relationship to [the] TCPA action.

*Id.* at 823. The court in *Ammons* cited several cases outside of this circuit that have followed similar reasoning to a similar conclusion. *See id.* at 822 (collecting cases). Notably, *Ammons* also cited *Ramsey v. Gen. Motors Fin. Co., Inc.*, No. 3-15-0827, 2015 WL 6396000 (M.D. Tenn. Oct. 22, 2015), noting the *Ramsey* court's reliance on *Salei*. *Ammons*, 305 F. Supp. 3d at 821-22.

---

[1] The *Ammons* court even noted that the fraudulent inducement claim bore a resemblance to a breach of contract claim. *See Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d at 823 n.3

Others in this circuit have found no common nucleus of operative fact where a plaintiff brought a TCPA claim and the defendant counterclaimed for breach of contract. In *Ramsey*, the court followed the reasoning in *Salei* in concluding that a plaintiff's TCPA claim and the defendant's counterclaim for breach of contract did not derive from a common nucleus of operative fact. It stated:

> Although Plaintiff's claim, from a broad perspective, arose from the underlying debt upon which Defendant sues, . . . the operative facts from which Plaintiff's federal claim arose are separate and different from the operative facts from which Defendant's state law claim arose. The proof needed to establish Defendant's violation of the TCPA . . . is different from the proof needed to establish Plaintiff's breach of the Contract . . . .

*Id.* at *2. The *Ramsey* court held that it lacked supplemental jurisdiction over the defendant's breach of contract counterclaim. *Id.* at *2. Likewise, in *Tilley v. Ally Fin., Inc.*, No. 16-cv-14056, 2018 WL 1535413 (E.D. Mich. Mar. 29, 2018), the court concluded that the defendant's "state-law breach of contract counterclaim and [the plaintiff]'s TCPA claim d[id] not derive from a common nucleus of operative facts." *Id.* at *1. The *Tilley* court reasoned that the plaintiff's TCPA claim arose out of alleged facts that the defendant "used an automated device to call her repeatedly without her consent[,]" while the defendant's "counterclaim, in contrast," derived from the plaintiff's alleged failure "to fulfill her payment obligations" under the contract. *Id.* Thus, the "nuclei of facts from which the respective claims" arose were distinct, and the court lacked supplemental jurisdiction over the defendant's counterclaim for breach of contract. *Id.* The *Tilley* court also cited *Ramsey* in reaching its holding. *Id.* at *1-2.

Here, however, Regional, relies on *Dotson v. Ally Fin., Inc.*, No. 2:19-cv-2274, 2019 WL 5847848 (W.D. Tenn. Nov. 7, 2019), in arguing that its counterclaim and Ms. Slaughter's TCPA claim derive from a common nucleus of operative fact. In *Dotson*, the court found that a clause in the contract allegedly breached was relevant to proving at least one and perhaps three of the

elements of the plaintiff's TCPA claim—that he was called without his prior consent, on his cell phone, by an automated dialing system. *Id.* at *5. Unlike the foregoing authorities discussed, then, in *Dotson,* facts relevant to the resolution of the plaintiff's TCPA claim were contained in the parties' contract that the plaintiff was alleged to have breached. Thus, some of the facts were relevant to the resolution of both the TCPA claim and the breach of contract claim.

The case at bar more closely resembles *Dotson*. On the one hand, it is certainly true that here, as in *Salei*, the federal and state claims before this Court are related in a broad or causal sense. It appears that the entire relationship of Ms. Slaughter and Regional consists of the Contract and Regional's calls to Ms. Slaughter, which Regional characterizes as attempts to collect payments under the Contract. (ECF No. 15 at 5). Thus, but for Ms. Slaughter's alleged breach of the Contract, the alleged TCPA violations would not have occurred. (ECF No. 15 at 5). On the other hand, and unlike *Salei* and the similar authorities discussed above, the facts relevant to the resolution of Ms. Slaughter's TCPA claim are not completely separate and distinct from those relevant to resolution of Regional's counterclaim for breach of contract.

Ms. Slaughter alleges that Regional violated the TCPA. Under the TCPA, it is unlawful for covered persons:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). Thus, for purposes of her TCPA claim, Ms. Slaughter must establish that Regional made calls to her cell phone, not for emergency purposes, using an automated telephone dialing system or an artificial or prerecorded voice,[2] without her express consent.

---

[2] Under the TCPA, an "automated telephone dialing system" means equipment that has the capacity both "to store or produce telephone numbers to be called, using a random or sequential number generator[]" and "to dial such numbers." 47 U.S.C. § 227(a)(1).

Meanwhile, Regional must establish that a contract existed between the parties and that Ms. Slaughter breached that contract.

The Contract in this case, which was attached as an exhibit to Regional's counterclaim and incorporated therein by reference, (ECF Nos. 5 at 7; 5-1), contains express terms relevant to the resolution of Ms. Slaughter's TCPA claim:

> **6. Servicing and Collection Contacts.**
> You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

(ECF No. 5-1 at 3). Thus, the Contract includes, *inter alia*, terms reflecting an agreement that Ms. Slaughter could be contacted by cell phone, for purposes of servicing and collection, using prerecorded or artificial voice messages or automatic telephone dialing systems. (ECF No. 5-1 at 3).

The foregoing contract language is significant for purposes of determining whether the parties' claims derive from a common nucleus of operative fact. To prevail on her TCPA claim, Ms. Slaughter must establish that Regional contacted her on her cell phone using such messages or systems without her prior express consent. At the same time, Regional must prove that a contract existed to prevail on its counterclaim, and the contract that allegedly exists between the parties contains terms reflecting a prior express agreement that could defeat Ms. Slaughter's TCPA claim. In view of the parties' Contract, it cannot be said, as it was in *Salei*, that the success of Ms. Slaughter's TCPA claim depends on a completely separate and distinct set of facts from the set of facts relevant to resolution of Regional's counterclaim. Nor can it be said, as it was in *Ammons*, that Regional's counterclaim on the car loan to Ms. Slaughter has no more than a tangential

relationship to her TCPA action. Taking into consideration the terms of the Contract, the Court concludes that the parties' claims derive from a common nucleus of operative fact.

### B. Supplemental Jurisdiction under 28 U.S.C. § 1367(c)

The question remains whether the Court should exercise supplemental jurisdiction over Regional's counterclaim for breach of contract.

A district court may decline to exercise supplemental jurisdiction over a claim where: (1) the claim raises a novel or complex issue of state law; (2) it substantially predominates over the claim over which the court has original jurisdiction; (3) the court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

The Court declines to exercise supplemental jurisdiction over Regional's counterclaim for breach of contract in view of the second and fourth considerations. With respect to the former, the *Dotson* court observed that courts have considered such factors as whether the state law claims outnumber the federal law claims, whether the state and federal law claims are distinct, and whether the state law claims involve proof not needed to establish the federal law claims. *Dotson v. Ally Fin., Inc.*, No. 2:19-cv-2274, 2019 WL 5847848, at *6 (W.D. Tenn. Nov. 7, 2019) (citing *Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 649841, at *9 (S.D. Ohio Mar. 11, 2009)) (citations omitted). Here, as in *Dotson*, the contract underlying the counterclaim is likely relevant to the resolution of the TCPA claim, because the contract contains terms that may establish prior express consent by Ms. Slaughter. *See Dotson*, 2019 WL 5847848 at *7. But "the main evidence relevant to the TCPA Claim will likely consist of records and testimony about the number of calls received and the use of the automatic dialing system, evidence that would be of no relevance to" Regional's breach of contract claim. *Id.* Moreover, the counterclaim, "which

contain[s] no allegations about telephone calls or an automatic dialing system, will rely primarily on evidence" not necessary to the TCPA, such as proof of Ms. Slaughter's failure to make timely payments on the car. *Id.* Thus, despite the Court's conclusion, *supra*, that the set of facts relevant to resolution of the TCPA claim are not completely separate and distinct from the set of facts relevant to resolution of Regional's counterclaim, neither do the two sets of facts or the proof going to them significantly overlap. Accordingly, this consideration cuts against the exercise of jurisdiction in the case *sub judice*.

There are other compelling reasons for declining jurisdiction here. *See* § 1367(c)(4). The TCPA is a remedial statute. *Parchman v. SLM Corp.*, 896 F.3d 728, 740-41 (6th Cir. 2018). Its "primary purpose . . . was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Id.* at 738. As such, it "must [be] liberally construe[d] in favor of consumer protection." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020). Where a TCPA claim is met by a counterclaim that attempts to collect an underlying debt, there is a risk of a chilling effect on a plaintiff's willingness to bring TCPA actions. *See Dotson*, 2019 WL 5847848 at *7 (citations omitted). In other words, the exercise of supplemental jurisdiction over counterclaims seeking to collect on the underlying debt that motivated the TCPA violations would potentially discourage prospective plaintiffs "'from bringing forth meritorious TCPA claims for fear of such counterclaims.'" *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 824 (M.D. Tenn. 2018) (quoting *Watkins v. Synchrony Bank*, No. 4:15-CV-00842, 2015 WL 5178134, at *5 (M.D. Penn. Sept. 4, 2015)) (dicta). While that risk may be lower where the plaintiff's TCPA claim far exceeds the defendant's counterclaim for the underlying debt, in this case it is unclear what the relative values of the parties' claims are. Regional's counterclaim is not nominal, being for nearly

ten thousand dollars. Ms. Slaughter's claim, however, is based on an unspecified number of violations. Thus, the Court cannot say that the risk of a chilling effect in cases such as this is low.

The Court also cannot say that the values of judicial economy or convenience will be greatly served by the exercise of jurisdiction here. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))). Such goals would be served to some extent in this case because both claims would be resolved in a single action. *See Riazi v. Ally Fin., Inc.*, No. 4:17CV1705JCH, 2017 WL 4260847, at *5 (E.D. Mo. Sept. 26, 2017) (citation omitted). As discussed above, however, the facts the parties must establish and the evidence they will likely give in proving their respective claims are largely different. Thus, whatever gains are made in economy and efficiency are unlikely to be significant. Comity also supports declining jurisdiction, because Regional may sue Ms. Slaughter in state court and use any judgment obtained there as a set-off to any judgment Ms. Slaughter obtains here. *See Dotson*, 2019 WL 5847848 at *7.

Thus, in light of the foregoing considerations, the Court declines to exercise supplemental jurisdiction in this case.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to Fed. R. Civ. Pro. 12(b)(1). (ECF No. 12). Defendant

Regional Acceptance Corporation's counterclaim for breach of contract is therefore **DISMISSED WITHOUT PREJUDICE**.

    **IT IS SO ORDERED.**

                                                **ALGENON L. MARBLEY**
                                                **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: December 14, 2020**